NELSON MULLINS RILEY & SCARBOROUGH LLP
LISA M. GIBSON (SBN 194841)
SHAWTINA F. LEWIS (SBN 259255)
CRISPIN L. COLLINS (SBN 311755)
19191 South Vermont Ave., Suite 900
Torrance, CA 90502
Telephone: 424.221.7400
Facsimile: 424.221.7499
Email:    lisa.gibson@nelsonmullins.com
          crispin.collins@nelsonmullins.com
          shawtina.lewis@nelsonmullins.com

Attorneys for Defendant
MCLAREN AUTOMOTIVE, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADDE ISSAGHOLI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MCLAREN AUTOMOTIVE, INC., a Delaware Corporation; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 2:19-cv-07616-MCS (KKx)<br><br>**DEFENDANT MCLAREN AUTOMOTIVE, INC.'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT**<br><br>Trial Date:    December 1, 2020 |

Pursuant to Local Rule 16-4, defendant McLaren Automotive, Inc. ("MAI") respectfully submits the following Memorandum of Contentions of Law and Fact.

## I. STATEMENT OF RELEVANT FACTS

This breach of warranty "lemon law" action involves a 2018 McLaren 720s (VIN SBM14DCA0JW002356) (the "Vehicle"), which was leased by plaintiff Adde Issagholi ("Plaintiff") on September 28, 2018 for $290,204.08, with 60 miles on it. The Vehicle is essentially a hand-built race car for street use, generally referred to as being a "supercar" because of its high performance characteristics.

Plaintiff filed this lemon law action in July 2019. In this action, the Vehicle lease was accompanied by MAI's 3-year limited vehicle warranty. In the Complaint, Plaintiff claims the Vehicle is subject to repurchase or restitution under the Song-Beverly Consumer Warranty Act because various alleged repair issues with the Vehicle substantially impaired the use, value or safety of the Vehicle.

One of the main complaints by Plaintiff is rattles and shaking (which are common with supercars due to limited insulation). However, the inspection of the Vehicle confirmed it is operating as designed. Both Plaintiff's expert and MAI's expert agreed there is nothing wrong with the operation of the Vehicle. There were also no fault codes, no outstanding issues, and/or no abnormal noises/rattles during test drive.

More importantly, plaintiff has not actually sustained any damages related to the Vehicle, as established in MAI's motion for summary judgment. Plaintiff and his accountant testified the lease and insurance payments for the Vehicle are made by a business called MereXMortals and it takes a business expense for the Vehicle. Plaintiff has not and does not make any payments for the Vehicle and, therefore, he has not been damaged in any way.

## II. CLAIMS AND EVIDENCE

### A. Plaintiff's Claims and Required Elements of Those Claims.

Plaintiff asserts claims for breach of implied warranty and breach of express warranty under the California Song-Beverly Consumer Warranty Act ("Song-

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

Beverly Act"). Plaintiff contends that certain repair issues he experienced with the Vehicle constitute a breach of the express and implied warranties covering the Vehicle.

### 1. Claim for Breach of Express Warranty Under Song-Beverly Consumer Warranty Act.

To establish his claim for breach of express warranty under the Song-Beverly Act, Plaintiff must prove:

(1) Plaintiff leased the Vehicle distributed by MAI;

(2) MAI provided to Plaintiff a written warranty which stated that MAI would repair or replace defects in material or workmanship in the vehicle covered by the applicable warranties;

(3) The Vehicle had a defect or defects covered by the warranty that substantially impaired the use, value or safety of the vehicle to a reasonable person in Plaintiff's position;

(4) Plaintiff delivered the Vehicle to MAI or its authorized repair facilities for repair of the alleged defect(s);

(5) MAI or its authorized repair facility failed to repair the Vehicle to match the written warranty after a reasonable number of attempts; and

(6) MAI did not replace or repurchase the Vehicle.

Judicial Council of California Civil Jury Instructions ("CACI") No. 3201; Cal. Civ. Code §1793.2(d).

However, a manufacturer is not liable for breach of warranty if it successfully repairs a vehicle under the applicable warranty. Rather, a manufacturer is only found liable if it fails to repair a vehicle to conform to its express warranty after a reasonable number of attempts to repair the alleged "nonconformity." Cal. Civ. Code §1793.2(d)(1).

Moreover, the repair issue must constitute a "nonconformity" as defined under the Song-Beverly Act. The Act is clear that a "nonconformity" means "a

nonconformity that *substantially impairs the use, value or safety of* the motor vehicle to the buyer." Cal. Civ. Code §1793.22(e)(1). (emphasis added); *see also Johnson v. Ford Motor Co.*, 35 Cal. 4th 1191, 1211 (2005). The Song-Beverly Act expressly contemplates, therefore, affording relief where there is *substantial* impairment. However, the impairment claimed by Plaintiff is not the type of substantial impairment contemplated under the Song-Beverly Act.

In *Johnson*, the California Supreme Court recognized that not every vehicle with a defect is a lemon. The Court stated:

> Even a vehicle with a defect is not necessarily a lemon. A 'nonconformity' requiring the vehicle's refund or replacement under our law must 'substantially impair the use, value or safety of the new vehicle.' (§ 1793.22, subd. (e)(1).) Not every customer complaint about a new car, or even every valid customer complaint, rises to that level. And customers and manufacturers frequently disagree whether a defect has been repaired or a reasonable number of repair attempts have been made.

*Id*. at 1211.

Moreover, a plaintiff is entitled to relief under the Song-Beverly Act only when "a reasonable number of repair attempts" have been made unsuccessfully to repair the "same nonconformity" which is covered by the warranty. Cal. Civ. Code §1793.22(b). Thus, a plaintiff is not entitled to relief for alleged nonconformities which were the subject of a single complaint and were repaired successfully under the warranty. Further, a plaintiff may not recover under the Song-Beverly Act if the "nonconformity" is the result of the plaintiff's unauthorized or unreasonable use of the vehicle. Cal. Civ. Code §1794.3.

In this case, there was no breach of the express warranty because the Vehicle did not have a defect covered by the warranty which substantially impaired the use, value or safety of the Vehicle that MAI was not able to repair after a reasonable number of attempts.

///

///

## 2. Claim for Breach of Implied Warranty Under Song-Beverly Consumer Warranty Act.

Under the Song-Beverly Act, "every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturers' and the retail seller's implied warranty that the goods are merchantable." Cal. Civ. Code §1792. Under the Act, "merchantability" means that the goods: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmations of fact made on the container or label. Cal. Civ. Code §1791.1(a). The primary factor in determining "merchantability" is whether the goods are "fit for the ordinary purposes for which such goods are used." *Id.*; *see Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297, 1303 (2009). Fitness for its ordinary purpose is generally shown if it is in safe condition and substantially free from defects. *Mexia* at 1303; *see also American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995) (implied warranty of merchantability does not impose a requirement that the goods "precisely fulfill the expectation of the buyer" but instead that the goods provide for "a minimum level of quality").

Here, the evidence establishes that there was no breach of the implied warranty of merchantability because the Vehicle was fit for the ordinary purposes for which McLaren vehicles are used. The Vehicle also operates and functions as designed.

### B. MAI's Evidence in Opposition to Plaintiff's Claims for Breach of Implied and Express Warranties.

#### 1. Repair History.

The first repair visit occurred on June 4, 2019 with 3,324 miles and it was in for repairs for approximately 9 days. Plaintiff had the following complaints: (1) driver's seat inoperable, which the dealership verified and found a fault seat

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

module; (2) passenger side lower door seal loose, which the dealership verified and resealed; (3) suspension degrading warning light, which the dealership verified and corrected with a software update; (4) parking system fault, which also required a software update; (5) rocks inside the door, which the dealership removed with compressed air; (6) brake hum, which the dealership could not verify; and (7) loose metal-type noise inside the cabin, which the dealership could not verify.

The vehicle was brought back to the dealership on June 27, 2019 with 4,098 miles and it was in for repairs for approximately 12 days.  Plaintiff complained about a rattling in the engine cover and the dealership determined the vehicle had a rough idle which required a transmission recalibration.  Plaintiff also complained about the roof trim, which the dealership determined needed to be replaced.  Plaintiff also complained about paint cracking between the fender and bumper, which the dealership verified.  Although Plaintiff also complained about a vibration in the driver's side mirror, the vehicle sometimes would not start, and the vehicle was leaking, the dealership did not find any problems.

Plaintiff brought the vehicle back to the dealership on November 11, 2019 with 6,475 miles and it was in for repairs for approximately 9 days.  Plaintiff complained about a suspension warning failure appearing.  The dealership found a stored fault, so it depressurized the suspension system, inspected the accumulators and recharged the suspension system, which resulted in the vehicle driving as designed.  Plaintiff also complained about a suspension noise, that the vehicle will not start at times and the vehicle shakes at idle, but none of the issues could be verified by the dealership.  Two service campaigns were also performed during the repair visit.

There are no other repair records for the vehicle and it presently operates as designed.

### 2. MAI's Inspection of Vehicle.

On August 19, 2020, MAI's expert inspected the vehicle at McLaren

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

Beverly Hills, which was also attended by Plaintiff's expert. MAI's expert also test drove the vehicle.

The beginning mileage showing on the odometer was 8,066 miles. There were no visible warning messages displayed on the Driver Information Module and no indications of any messages stored.

A functional test of the driver seat showed a properly working seat as designed. Plaintiff's expert was present and was witness to the functionality of the seat both forward and backward. No defect in design or workmanship was found. A repair was carried out on June 10, 2019 where a seat module (mini seat computer) was replaced as per the manufacturer's warranty.

The passenger door seal was fitted properly and appeared in good working condition. This issue was addressed by the authorized dealership on June 7, 2019 and repaired as per manufacturer's warranty. McLaren vehicles are fitted with two separate door seals so in the event of one failing the second seal ensures noise and dust are kept to an absolute minimum.

There were no suspension warning messages present on the day of our inspection. The nose lift was tested with the Plaintiff's expert in the Vehicle. All suspension was operation and working as designed.

During an accompanied test drive, the braking system was tested on both surface streets near the service department as well as on the freeway. No brake noises or "hum" could be heard. There is evidence of detailing chemicals on the brake calipers and brake pads. On a repair order dated June 4, 2019, the trained McLaren dealership technicians were unable to duplicate any alleged noises. It is likely that any noises heard are either the result of detailing compound/chemicals getting on the friction surface of the brakes or the driver is unfamiliar with what carbon ceramic braking systems sound like. These CF braking systems are not the same in design or nature of steel braking systems and they have their own distinct sounds.

No interior cabin noises could be heard outside of the normal street noises and those normally found in a carbon fiber tub vehicle. Plaintiff's expert agreed the car "was good" and no abnormal noises were heard. Plaintiff's expert further stated that during his testing of the Vehicle, he was comfortable accelerating the Vehicle to speeds of more than 160 mph. He had no concerns and was very comfortable at that speed. During the test drive, MAI's expert performed a variety of suspension mode changes to ensure proper operation. In all modes (Normal, Sport and Track), the suspension performed as designed and no faults were present.

An MDS (McLaren Diagnostic System) download was performed. The data supplied by the Vehicle's onboard computers shows low battery voltage but nothing remarkable beyond this basic message. It is unknown if Plaintiff uses the battery maintainer or if it is used properly as listed in the owners guide.

During the static portion of the inspection, there were minor damages found to the front splitter, the undertray, and one side body panel where a small scrape had occurred.

A minor oil leak was spotted in the engine bay. It is from the residual oil from the intake hose which is split at the turbo. There was no oil on the undertray nor pooling anywhere under the vehicle. Significantly, this is something that would normally be inspected for and caught early during routine servicing of the Vehicle.

Both Plaintiff's expert and MAI's expert agreed there is nothing wrong with the Vehicle (other than the intake hose needs replacing). There were no fault codes, no outstanding issues, no abnormal noises/rattles during test drive, and the inspection confirmed the Vehicle operated as designed with no known issues.

///

///

### 3. An Award of Civil Penalties Is Not Warranted in this Matter.

Plaintiff alleges he is entitled to a civil penalty pursuant to Civil Code section 1794(c). However, Plaintiff cannot establish that MAI willfully violated its obligations under the Song-Beverly Act. Cal. Civ. Code §1794(c). A violation is not willful if MAI reasonably and in good faith believed that the facts did not require the repurchase or replacement of the vehicle. Among the factors to be considered by the jury are whether MAI knew the vehicle had not been repaired within a reasonable period or after a number of attempts, and whether MAI had a written policy on the requirement to repair or replace. *See Jensen v. BMW of North America, Inc.*, 35 Cal. App. 4th 112, 136 (1995).

Furthermore, "the penalty under section 1794(c), like other civil penalties, is imposed as punishment or deterrence of the defendant, rather than to compensate the plaintiff. In this, it is akin to punitive damages. Neither punishment nor deterrence is ordinarily called for if the defendant's actions proceeded from an honest mistake or a sincere and reasonable difference of factual evaluation. As our Supreme Court recently observed, '. . . courts refuse to impose civil penalties against a party who acted with a good faith and reasonable belief in the legality of his or her actions.' " *Kwan v. Mercedes Benz of North America, Inc.*, 23 Cal. App. 4th 174, 184-85 (1994) (citation omitted).

There is no evidence to establish MAI's alleged failure to repurchase or replace the Vehicle was willful. In fact, the Vehicle was repaired under the warranty for separate issues each time it was brought to the authorized repair facility, at no cost to Plaintiff. Further, at the time the Vehicle was inspected in August 2020, the Vehicle was operating as designed. Accordingly, Plaintiff cannot recover a civil penalty against MAI in this action.

///

///

I. **SUMMARY OF AFFIRMATIVE DEFENSES MAI PLANS TO PURSUE.**

**Affirmative Defense No. 1**: Plaintiff fails to state facts sufficient to constitute a cause of action against MAI.

**Affirmative Defense No. 2:** There was no breach of warranty because Plaintiff's concerns were resolved under the warranty.

**Affirmative Defense No. 3**: Plaintiff and/or others misused, abused, altered and improperly cared for and maintained the vehicle, and Plaintiff's damages, if any, were proximately caused by such misuse, alteration, abuse and neglect of the vehicle.

**Affirmative Defense No. 4:** The damages asserted in Plaintiff's complaint were not the result of any defect in material or workmanship in any vehicle manufactured by MAI. Further, one or more of the stated specific warranty exclusions are applicable.

**Affirmative Defense No. 5**: Plaintiff failed to maintain the vehicle and is precluded from recovery due to failure to maintain and service the vehicle in conformance with the requirements and recommendations of the owner's manual and/or warranty.

**Affirmative Defense No. 6**: The limited warranty limits the damages that Plaintiff may recover for any breach of warranty such that incidental or consequential damages are not recoverable.

**Affirmative Defense No. 7**: The vehicle was fit for its intended purpose of providing transportation and Plaintiff is not entitled to relief for breach of the implied warranty of merchantability.

**Affirmative Defense No. 9**: The alleged nonconformities do not substantially impair the use, value or safety of the vehicle.

**Affirmative Defense No. 12:** Plaintiff's Complaint has not stated facts sufficient to constitute a basis for recovery of prejudgment interest.

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

**Affirmative Defense No. 13:** Plaintiff failed to use reasonable care to protect himself and to minimize his losses and damages, if any.

**Affirmative Defense No. 15**: MAI has acted in good faith and reasonably in connection with the repair issues and claims asserted by Plaintiff.

**Affirmative Defense No. 16**: Plaintiff has failed to comply with the notice, maintenance and obligations under the warranty and therefore his claims are barred by the conditions, disclaimers and exclusions of the McLaren express limited warranty.

**Affirmative Defense No. 23**:  MAI is not responsible for any damages to Plaintiff that were caused or contributed to by intervening or superseding acts of other persons or entities, including Plaintiff.

**Affirmative Defense No. 24**:  MAI is not responsible for any consequential or incidental damages of Plaintiff.

**Affirmative Defense No. 27**: Plaintiff cannot recover civil penalties against MAI under California Civil Code section 1794(c) or (e) as Plaintiff did not make a written demand for repurchase of the vehicle and cannot establish any willful conduct on the part of MAI.

## II. ELEMENTS REQUIRED TO ESTABLISH AFFIRMATIVE DEFENSES.

### A. Elements required to establish Affirmative Defense No. 1 – Failure to State a Claim.

Even if all the factual allegations in the Complaint are deemed true, they are insufficient to establish a cause of action against MAI because there was no substantial impairment of use, value or safety of the Vehicle as required by the Song-Beverly Act.

### B. Elements required to establish Affirmative Defense No. 2 – No Breach of Warranty.

There is no breach of warranty if the vehicle did not have any defects that

substantially impaired the vehicle's use, value or safety to a reasonable person in Plaintiff's position and/or if MAI or its authorized repair facility repaired the vehicle to match the written warranty after a reasonable number of opportunities to do so. CACI No. 3201. Plaintiff has failed to produce any evidence to the establish a breach of warranty.

### C. Elements required to establish Affirmative Defense No. 3 – Abuse, Misuse, Alteration and Improper Care.

MAI is not responsible for any damages to Plaintiff if MAI proves that the alleged defects in the Vehicle were caused by Plaintiffs' improper use or maintenance of the vehicle. *See* CACI No. 3220; Cal. Civ. Code §1794.3.

### D. Elements required to establish Affirmative Defense No. 4 – No Defect in Materials or Workmanship.

This defense is premised on the absence of any evidence by Plaintiff to demonstrate a defect in materials or workmanship in the Vehicle. The McLaren warranty states that MAI will repair defects to the Vehicle during the warranty coverage period.

### E. Elements required to establish Affirmative Defense No. 5 – Failure to Maintain Vehicle.

This defense does not have specific elements but is premised upon the fact that Plaintiff did not properly service or maintain the Vehicle as required under the terms of McLaren vehicle limited warranty. Plaintiff has not produced any evidence to demonstrate he submitted the Vehicle to an authorized repair facility for all service and maintenance as required.

### F. Elements required to establish Affirmative Defense No. 6 – Disclaimer of Incidental and Consequential Damages and Limitation of Damages.

This defense does not have specific elements but is premised upon the fact that the McLaren express limited warranty specifically states that "no payment or

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AT LAW
LOS ANGELES

other compensation will be made for incidental or consequential damage, . . . incurred or sustained by reason of the failure of any part or assembly which may be repaired or replaced in accordance with the terms of this warranty." McLaren Service and Warranty Booklet, p. 6.

### G. Elements required to establish Affirmative Defense No. 7 – Vehicle Fit for Intended Purpose.

There is no breach of the implied warranty of merchantability if the vehicle is fit for the ordinary purpose for which it is used, in this case, transportation. Cal. Civ. Code §1791.1(a); *American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1299 (1995). The Vehicle was used for its intended purpose.

### H. Elements required to establish Affirmative Defense No. 9 – No Impairment of Use, Value or Safety.

A nonconformity" under the Song-Beverly Act must be "a nonconformity that *substantially impairs the use, value or safety of* the motor vehicle to the buyer." Cal. Civ. Code §1793.22(e)(1); *Johnson v. Ford Motor Co*. (2005) 35 Cal.4th 1191, 1211. The repair issues did not substantially impair the use, value or safety of the Vehicle.

### I. Elements required to establish Affirmative Defense No. 12 – No Prejudgment Interest:

Plaintiff is not entitled to recover prejudgment interest because MAI has not breached the limited express warranty or otherwise violated the Song-Beverly Warranty Consumer Act. Further, prejudgment interest is not appropriate where the amount of damages are not certain, or cannot be made certain, until the jury determines whether there was a nonconformity, whether it impaired the use, value or safety of the Vehicle, whether Plaintiff actually sustained damages, and the mileage at which the Vehicle was presented for repair. Cal. Civ. Code § 3287; *Duale v. Mercedes-Benz USA, LLC*, 148 Cal. App. 4th 718, 729 (2007).

**J.     Elements required to establish Affirmative Defense No. 15 – Good Faith Conduct:**

This defense does not have specific elements but is premised on the fact that MAI acted in good faith in covering all repairs under the applicable warranty at no cost to Plaintiff.

**K.     Elements required to establish Affirmative Defense No. 16 – Warranty Exclusions:**

This defense does not have specific elements but is premised on the fact that the McLaren vehicle limited warranty is void if any fault which develops on the McLaren vehicle can be wholly or partially attributed to performance related modifications which are not approved by MAI.  Also, the warranty may be invalidated if the Plaintiff failed to perform the required service and maintenance.

**L.     Elements required to establish Affirmative Defense No. 23 – Intervening or Superseding Acts:**

This defense does not have specific elements but is premised on the fact that Plaintiff failed to comply with his obligations under the McLaren warranty and properly service and maintain the Vehicle.

**M.     Elements required to establish Affirmative Defense No. 24 – Disclaimer of Consequential Damages:**

This defense does not have specific elements but is premised upon the fact that the McLaren express limited warranty specifically states that "no payment or other compensation will be made for incidental or consequential damage, . . . incurred or sustained by reason of the failure of any part or assembly which may be repaired or replaced in accordance with the terms of this warranty."   McLaren Service and Warranty Booklet, p. 6.

**N.     Elements required to establish Affirmative Defense No. 27 – Disclaimer of Civil Penalties:**

To recover civil penalties, Plaintiff must establish that MAI willfully

violated its obligations under the Song-Beverly Act. Cal. Civ. Code §1794(c). There is no evidence that MAI acted improperly or willfully in connection with the Vehicle.

## III. BRIEF DESCRIPTION OF KEY EVIDENCE IN SUPPORT OF AFFIRMATIVE DEFENSES.

The Vehicle was repaired pursuant to the warranty and MAI covered all alleged nonconformities at no cost to Plaintiff. The Vehicle was repaired within a reasonable time when presented to an authorized repair facility and the use, value or safety of the Vehicle was not substantially impaired.

MAI incorporates the summary of evidence provided in Section II.B, above as though fully set forth herein, and identifies the following additional evidence/documents in support of its affirmative defenses:

1. Lease Agreement
2. MAI Service and Warranty Manual
3. MAI Owner's Manual for Vehicle
4. Testimony of Plaintiff
5. Testimony of Massis Bedrossian, CPA
6. Testimony of Patrick Dahlberg
7. Testimony of Scott Morgan, his Expert Report and Exhibits
8. Repair Orders
9. Inspection Reports
10. Diagnostic Printouts
11. Plaintiff's Discovery Responses

MAI's defenses are also based on the absence of evidence to support Plaintiff's claims.

## IV. SIMILAR STATEMENTS OF THIRD PARTIES.

Not applicable.

## V. ANTICIPATED EVIDENTIARY ISSUES AND MAI'S POSITION ON THOSE ISSUES.

MAI has filed Motions in Limine to exclude certain evidence at trial. MAI does not anticipate any additional evidentiary issues at this time, but reserves its right to raise such issues as they arise.

## VI. ISSUES OF LAW

MAI incorporates Sections II and IV, above and the Motions in Limine filed by MAI.

## VII. BIFURCATION OF ISSUES.

MAI does not request bifurcation of any issues.

## VIII. JURY TRIAL.

Plaintiff's claims are triable by jury. Plaintiff demanded a jury trial at the time he filed his complaint.

## IX. ATTORNEY'S FEES.

The Song-Beverly Act allows a prevailing Plaintiff to recover his or her costs, including reasonable attorney's fees, incurred in bringing an action under the Act. Civil Code §1794(d).

## X. ABANDONMENT OF ISSUES.

It is not known by MAI whether Plaintiff has abandoned any of his claims.

Dated: October 19, 2020

Respectfully submitted,

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: */s/ Lisa M. Gibson*
Lisa M. Gibson
Crispin L. Collins
Shawtina F. Lewis

Attorneys for Defendant
MCLAREN AUTOMOTIVE, INC.

DEFENDANT MCLAREN AUTOMOTIVE, INC.'S MEMORANDUM OF CONTENTIONS OF LAW AND FACT

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 19, 2020, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses for counsel of record registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

By: /s/ *Lisa M. Gibson*
Lisa M. Gibson